

J. Christopher Jensen (JJ 1864)
Lloyd McAulay (LM 6839)
COWAN, LIEBOWITZ & LATMAN, P.C.
1133 Avenue of the Americas
New York, NY 10036
(212) 790-9200
Attorneys for Plaintiff

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------ x

CARDIOVASCULAR RESEARCH
FOUNDATION,

                Plaintiff,

      -against-

RONI AMIEL and NOVOLUTIONS, INC.,

                Defendants.

------------------------------------------------------------------ x

Civil Action No.

**COMPLAINT**

**JURY TRIAL DEMANDED**

Plaintiff Cardiovascular Research Foundation ("CRF" or "Plaintiff"), by its undersigned attorneys, Cowan, Liebowitz & Latman, P.C., as and for its complaint against Defendants Roni Amiel and Novolutions, Inc. ("Defendants"), alleges as follows:

### NATURE OF THE ACTION

1.     This is an action for injunctive relief and damages arising, <u>inter alia</u>, from the Defendants' theft of corporate opportunities, misappropriation of CRF's proprietary software and trade secrets and the breach of fiduciary and contractual obligations by its former employee, Defendant Roni Amiel. Unbeknownst to CRF, while employed by CRF, and using CRF's money, facilities, confidential business information and trade secrets and other company

28260/000/839539.1

resources and assets, Roni Amiel established Defendant Novolutions, Inc. in order to sell or otherwise exploit CRF's proprietary software programs for his own personal benefit.

## PARTIES

2. Plaintiff CRF is a not-for-profit 501(c)(3) foundation organized and existing under the laws of the District of Columbia with its principal place of business located at 111 E. 59th Street, New York, New York 10022 within this judicial district.

3. Upon information and belief, Defendant Roni Amiel ("Defendant Amiel") is a citizen of the State of New Jersey residing at 4 Amy Dr., North Brunswick, New Jersey 08902. Defendant Amiel was formerly employed by Plaintiff at its principal place of business in New York, New York and the tortious acts and other breaches complained of herein were committed within the State of New York.

4. Upon information and belief, Defendant Novolutions, Inc. ("Novolutions") is a corporation organized and existing under the laws of the State of New Jersey with a principal place of business located at 4 Amy Dr., North Brunswick, New Jersey 08902.

## JURISDICTION AND VENUE

5. This Court has jurisdiction of the subject matter of this action pursuant to 28 U.S.C. § 1332 in that there is complete diversity of citizenship between the parties and the amount in controversy exceeds the sum of $75,000 exclusive of interest and costs.

6. Venue is proper pursuant to 28 U.S.C. § 1391(a)(2) in that the events giving rise to the claim occurred within this judicial district.

## FACTUAL BACKGROUND

7. CRF is one of the world's largest private medical research foundations dedicated to improving the quality of life and treatment for patients by advancing the development of safe and effective methods for diagnosing and treating cardiovascular disease.

8. In pursuit of this goal, CRF has developed and was in the process of developing, at great expense and effort, a number of computer software programs used in the management of clinical trials for new cardiovascular devices and treatments intended to comply with requirements of the United States Food and Drug Administration ("FDA") regulations promulgated in 21 CFR Part 11. The software programs include programs for the internal management of a clinical research organization, the gathering of data on patient outcomes in clinical trials of new medical therapies and the gathering and transmission of image based data from clinical trial participants, such as CAT scans, MRIs and related medical imaging (collectively, "the CRF software programs"). The CRF software programs are used internally by CRF and its affiliated physicians and business partners to support and to manage clinical trials evaluating new medical devices and other types of medical research.

9. The CRF software programs have been developed or were being developed in accordance with CRF specifications and proprietary methods of doing business, all of which constitute highly confidential trade secrets of CRF that are essential to CRF's business and that provide CRF with a competitive advantage over those who do not have access to such information.

10. From August 2005 until July 2008, Defendant Amiel was employed as the Director of Information Technology for CRF. Defendant Amiel was entrusted and directed as part of his job with the overall responsibility for supervising the development and adaptation of

3

the CRF software programs and for engaging outside software developers to develop such programs based upon CRF's proprietary and confidential methods of doing business.

11. Upon commencing his employment in 2005, Defendant Amiel signed a Confidentiality and Non-Disclosure Agreement with CRF (the "Confidentiality Agreement") dated and effective as of August 19, 2005, in which he promised to maintain the confidentiality of CRF's proprietary information and to use such information only for the benefit of CRF. Defendant Amiel expressly promised in the Confidentiality Agreement not to use any confidential information disclosed to him by CRF during the course of his employment for his own benefit or the benefit of any third party.

12. Defendant Amiel further acknowledged in the Confidentiality Agreement that his breach or attempted or threatened breach of the contract may cause irreparable harm to CRF, and that accordingly CRF would be entitled in the case of a breach or attempted breach to preliminary or other injunctive relief without a showing of irreparable injury or other demonstration of harm and without the need to post a bond.

13. In connection with his continuing employment as Director of Information Technology for CRT, Defendant Amiel also agreed in writing to comply with all of CRF's policies and procedures set forth in CRF's Administrative Policy and Procedure Manual (the "CRF Manual") and CRF's Employee Handbook (the "CRF Handbook").

14. Defendant Amiel further acknowledged in writing that he had received and read both the CRF Manual and the CRF Handbook, both of which expressly provide that all CRF communication systems and computer equipment, and the data and information stored in them, are the sole property of CRF and shall not be used for personal purposes. Specifically, Defendant Amiel agreed by signing CRF's Employee Acknowledge Form 20 on August 15,

28260/000/839539.1

2005 that he would not use code, access a file or retrieve any stored communication unless authorized.

15. The CRF Handbook further provides that employees may not use CRF communication systems and computer equipment for purposes that are adverse to CRF's business interests, including, but not limited to, the unauthorized transferring of CRF's confidential, trade secret or proprietary information to third parties or the preparation of computerized information, files or documents that could be used to compete with CRF or for personal gain.

16. Upon information and belief, commencing at some date presently unknown to CRF, but believed to be prior to April 2008, in breach of his contractual obligations to CRF and his fiduciary duty of loyalty to CRF, Defendant Amiel began to devote substantial portions of his time and effort at CRF to a scheme to misappropriate and to commercially exploit the CRF software programs that were being developed by CFR for Defendant Amiel's own personal benefit.

17. Upon information and belief, in furtherance of his scheme to misappropriate CRF's software programs and related trade secrets, Defendant Amiel secretly developed versions of the CRF software programs that could be sold or licensed to third parties engaged in medical research and the management of FDA clinical trials. Defendant Amiel engaged in this activity during his regular business hours on CRF's premises and using CRF's funds, computer systems and other assets, without CRF's knowledge or consent and in violation of Defendant Amiel's contractual and fiduciary obligations to CRF.

18. Defendant Amiel directed CRF's outside vendors and third-party programmers to develop and validate the software programs that Defendant Amiel was creating for his personal

28260/000/839539.1

business use and approved the payment of the expenses of such development and validation by CRF.

19. Upon information and belief, by falsely claiming that he was working on the enhancement and adaptation of the CRF software programs exclusively for CRF's benefit and use, Defendant Amiel was able to solicit critical feedback and information from CRF's employees and otherwise to gather and use confidential and proprietary company information and trade secrets during the process of developing software programs for his own business.

20. Upon information and belief, in or about April 2008, Defendant Amiel established defendant Novolutions as a New Jersey corporation for the purpose of selling the software programs that he was developing while at CRF using CRF's money and other assets.

21. Defendant Novolutions, with the direct participation and assistance of Defendant Amiel, is offering for sale on Novolutions' website located at the web address www.novolutions.com versions of the CFR software programs under the brand names SynergyProject, SynergyClinical, SynergyImage and SynergyTracking ("Defendants' Synergy programs").

22. Upon information and belief, the Novolutions website was similarly developed by Defendant Amiel using the CRF electronic communication computer system during regular business hours.

23. Upon information and belief, Defendants' Synergy versions of the CRF software programs were developed by Defendant Amiel using the CRF electronic communication system and the services of CRF's outside software developers at CRF's expense.

28260/000/839539.1

24. As a proximate result of the acts of defendants as alleged herein, plaintiff has suffered and will continue to suffer great damage to its business and loss of potential business opportunities in an amount to be determined at trial.

25. Plaintiff has no adequate remedy at law and will continue to suffer irreparable harm unless Defendants are enjoined by this Court.

26. In acting as alleged herein, Defendants have acted with oppression, fraud and malice toward Plaintiff and with an intent to injure Plaintiff. Plaintiff is therefore entitled to an award of punitive damages.

## FIRST CLAIM FOR RELIEF
### (Breach of Contract – Against Defendant Amiel)

27. Plaintiff repeats and realleges the allegations of paragraphs 1-26 above with the same force and effect as if set forth fully herein.

28. At all relevant times, Plaintiff fully performed its obligations under the Confidentiality Agreement.

29. Defendant Amiel materially breached his obligations under the Confidentiality Agreement by disclosing and misappropriating confidential information, including the CRF software programs and other confidential and proprietary CRF business information, for his own benefit and the benefit of his company, Defendant Novolutions. Defendant Amiel's actions also materially breached his contractual obligation to comply with the terms of the CRF Manual and CRF Handbook, both of which prohibit the use of CRF's communications systems and computer equipment for personal purposes and gain.

## SECOND CLAIM FOR RELIEF
### (Conversion of Corporate Assets – Against Both Defendants)

30. Plaintiff repeats and realleges the allegations of paragraphs 1-29 above with the same force and effect as if set forth fully herein.

28260/000/839539.1

31. Plaintiff was the rightful owner and lawful possessor of corporate assets utilized by Defendants in developing Defendants' Synergy programs, including, but not limited to, the CRF software programs, monetary funds used by Defendants to compensate outside vendors and third-party programmers, manpower of CRF's employees and consultants, and Plaintiff's office space and supplies, including, but not limited to, Plaintiff's computer systems, software and hardware.

32. Defendants exercised unauthorized dominion and control over Plaintiff's corporate assets to the exclusion of Plaintiff's rights.

33. Defendants misused Plaintiff's corporate assets contrary to their intended purpose, for a purpose not authorized by Plaintiff, namely, to develop and modify CRF software programs for Defendants' own benefit and to establish a company to offer for sale such programs in competition with Plaintiff.

### THIRD CLAIM FOR RELIEF
**(Breach of Fiduciary Duty and Duty of Loyalty – Against Defendant Amiel)**

34. Plaintiff repeats and realleges the allegations of paragraphs 1-33 above with the same force and effect as if set forth fully herein.

35. CRF reposed trust and confidence in Defendant Amiel. By virtue of his employment as Director of Information Technology, Defendant Amiel owed to CRF a fiduciary duty of loyalty not to act in any manner inconsistent with his agency and trust, and Defendant Amiel was bound at all times to exercise the utmost good faith and loyalty in the performance of his duties in the best interest of CRF.

36. Defendant Amiel breached his fiduciary duty by engaging in the above-described wrongful acts, including, but not limited to, converting Plaintiff's corporate assets for his own

benefit and the benefit of Novolutions, failing to offer corporate opportunities to Plaintiff and establishing a business to compete with Plaintiff while in Plaintiff's employment.

37. As a result of such breach of fiduciary duty and duty of loyalty to Plaintiff, Defendant Amiel must pay restitution to Plaintiff for all salary and benefits received from Plaintiff during the period of such disloyalty in an amount to be determined at trial.

### FOURTH CLAIM FOR RELIEF
### (Misappropriation of Corporate Opportunity – Against Defendant Amiel)

38. Plaintiff repeats and realleges the allegations of paragraphs 1-37 above with the same force and effect as if set forth fully herein.

39. At all relevant times, Defendant Amiel had a fiduciary duty to act with loyalty to and in the best interest of Plaintiff.

40. At all relevant times, Plaintiff had a tangible expectancy in the development and exploitation of the CRF software programs for CRF's benefit.

41. CRF utilizes and relies on the CRF software programs as an important component of the consulting services CRF offers to its clients in supporting and managing clinical trials and other medical research and in the internal administration of CRF's business activities. The CRF software programs are integral features of Plaintiff's business and of the services that CRF provides to its customers.

42. At all relevant times, Plaintiff had the financial and other means to commercially exploit, including the means to develop and to offer for sale, the CRF software programs.

43. Defendant Amiel did not present to Plaintiff the business opportunity to develop and offer for sale to CRF's customers Defendants' Synergy versions of the CRF software programs. Instead, Defendant Amiel deliberately withheld all information relating to the opportunity and his business from Plaintiff.

9

44. Defendant Amiel's opportunity to develop and offer for sale his Synergy versions of the CRF software programs arose solely from his position as an employee of CRF and his access to CRF's confidential and proprietary business information.

45. Without the knowledge or consent of Plaintiff, solely to advance his own personal financial benefit and not for Plaintiff's benefit, Defendant Amiel surreptitiously diverted the opportunity to himself and Novolutions.

46. Defendant Amiel's actions were taken in bad faith and in direct contravention of his duty of loyalty to Plaintiff.

47. As a result of the diversion, Plaintiff has sustained damages and profits it would have enjoyed but for Defendant Amiel's diversion and misappropriation of Plaintiff's corporate opportunity.

### FIFTH CLAIM FOR RELIEF
### (Theft of Trade Secrets – Against All Defendants)

48. Plaintiff repeats and realleges the allegations of paragraphs 1-47 above with the same force and effect as if set forth fully herein.

49. Plaintiff was in possession of trade secrets and confidential proprietary and business information, including, but not limited to, Plaintiff's confidential software code and its confidential methods for the management of clinical trials and the data obtained from such trials.

50. Plaintiff's proprietary information derives independent economic value from not being generally known to the public and has provided and will provide Plaintiff with an essential commercial advantage over its competitors. This advantage is extremely important to the continuing operations of CRF.

51. Plaintiff has expended significant time, financial resources, and efforts in developing its confidential and proprietary business information.

28260/000/839539.1

52. Plaintiff's proprietary business information is not known outside of Plaintiff, and is not readily ascertainable by outsiders. Plaintiff has made and continues to make diligent efforts to protect the confidentiality and secrecy of its proprietary business information.

53. Defendants were aware, from the nature of the information and the context of its creation, acquisition and use that Plaintiff's business information was confidential and proprietary and that they were expected not to misappropriate them.

54. Defendants have willfully and maliciously misappropriated and/or wrongfully taken and used Plaintiff's confidential and proprietary business information as described herein. Defendants have greatly benefited, and unless they are enjoined, will continue to greatly benefit from their use of Plaintiff's confidential and proprietary business information.

55. As a result of the diversion, Plaintiff has sustained damages and profits it would have enjoyed but for Defendant Amiel's and Novolutions' diversion and misappropriation of Plaintiff's trade secrets.

## SIXTH CLAIM FOR RELIEF
### (Unjust Enrichment – Against All Defendants)

56. Plaintiff repeats and realleges the allegations of paragraphs 1-55 above with the same force and effect as if set forth fully herein.

57. Defendants have the useful benefit of Defendants' Synergy programs and, upon information and belief, have entered into business arrangements to exploit these programs for profit, resulting in Defendants having been unjustly enriched.

58. Defendants developed Defendants' Synergy programs by misappropriating and utilizing Plaintiff's corporate assets without permission and without compensation.

59. Thus, Defendants' enrichment has been at the expense of and in detriment to Plaintiff.

28260/000/839539.1

60. As a result of the foregoing, Defendants have been unjustly enriched at the expense of Plaintiff in an amount to be determined at trial.

## SEVENTH CLAIM FOR RELIEF
### (Constructive Trust – Against All Defendants)

61. Plaintiff repeats and realleges the allegations of paragraphs 1-60 above with the same force and effect as if set forth fully herein.

62. Defendants acquired Defendants' Synergy programs in such circumstances that they may not in good conscience and equity retain the benefits of the programs.

63. In addition to the other relief demanded herein, Plaintiff prays for entry of a judgment declaring that all right, title and interest in and to Defendants' Synergy programs, and any other versions thereof, together with any unlawful profits or gains derived from the commercial exploitation of such software programs be held in constructive trust for Plaintiff and conveyed to Plaintiff.

## JURY TRIAL DEMANDED

64. Plaintiff demands a jury trial on all issues triable by a jury.

WHEREFORE, Plaintiff respectfully requests judgment against Defendants as follows:

(a) awarding preliminary and permanent injunctive relief:

(i) enjoining Defendants from marketing, developing, selling, offering for sale and/or otherwise exploiting the CRF software programs and Defendants' Synergy programs;

(ii) compelling Defendants to return to Plaintiff immediately all originals of any code, software, documents, data, records, files or computer disks removed or otherwise misappropriated from Plaintiff by Defendants, including, but not limited to, all

such materials that embody, reflect or contain Plaintiff's trade secrets and proprietary and confidential information;

(iii) compelling Defendants to destroy all copies of any code, software, documents, data, records, files or computer disks removed or otherwise misappropriated from Plaintiff by Defendants, including, but not limited to, all such materials that embody, reflect or contain Plaintiff's trade secrets and proprietary and confidential information;

(iv) enjoining Defendants from utilizing and/or exploiting any of Plaintiff's trade secrets and proprietary and confidential information and copies of same; and

(v) compelling Defendants to convey Defendants' Synergy programs to Plaintiffs;

(b) awarding Plaintiff all damages, suffered as a result of Defendants' wrongful acts in an amount to be determined at trial but presently believed to be in excess of One Million Dollars ($1,000,000.00);

(c) awarding Plaintiff punitive damages of Five Million Dollars ($5,000,000.00);

(d) awarding Plaintiff restitution of all salary and benefits paid by Plaintiff to Defendant Amiel during a period to be determined at trial;

(e) imposing a constructive trust over Defendants' Synergy programs for the benefit of CRF and compelling Defendants to convey Defendants' Synergy programs to Plaintiffs;

(f) awarding Plaintiff pre-judgment interest on all sums awarded;

(g) awarding Plaintiff all costs and expenses incurred in this action, including reasonable attorneys' fees; and

28260/000/839539.1

(h)     granting Plaintiff such other and further relief as the Court may deem just and proper.

Dated: New York, New York
       August 7, 2008

COWAN, LIEBOWITZ & LATMAN, P.C.

By: *[signature]*
J. Christopher Jensen (JJ 1864)
Lloyd McAulay (LM 6839)
1133 Avenue of the Americas
New York, New York 10036-6799
(212) 790-9200
Attorneys for Plaintiff

28260/000/839539.1